**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| TYRONE L. JONES,<br>　　　　　Appellant, | DOCKET NUMBER<br>PH-0752-23-0036-I-1 |
| v. | |
| DEPARTMENT OF THE ARMY,<br>　　　　　Agency. | DATE:  April 17, 2026 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>James Barrett Kelly</u>, Esquire, Washington, D.C., for the appellant.

<u>Stephen Artymowicz</u>, Esquire, Aberdeen Proving Ground, Maryland, for the agency.

### BEFORE

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

### FINAL ORDER

The agency has filed a petition for review of the initial decision, which reversed the appellant's removal as incompatible with *Kalkines v. United States*, 200 Ct. Cl. 570 (1973).  For the reasons discussed below, we GRANT the agency's petition for review, VACATE the administrative judge's determination that the agency's charges are invalid due to the lack of *Kalkines* notice, AFFIRM

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

the administrative judge's finding of no equal employment opportunity (EEO) reprisal, and SUSTAIN the appellant's removal.

## BACKGROUND

The appellant was a DB-03 Mechanical Engineer with the agency's Combat Capabilities Development Command (DEVCOM) Army Research Laboratory (ARL), Weapons & Material Research Directorate, Terminal Effects Division. Initial Appeal File (IAF), Tab 4 at 20. In this role, he authored technical presentations on behalf of the agency. IAF, Tab 25-11 at 94. Before a DEVCOM ARL employee disseminates technical information outside of the unit, the information must undergo an extensive "Form 1" review process. *Id.* at 6-7.

In January 2022, the appellant submitted a version of the presentation, "Ballistic Characterization of 3D Printed Silicon Carbide for Customized Armor Applications," for Form 1 review. IAF, Tab 20 at 14. Without first completing the Form 1 review process, the appellant gave permission for a coauthor to give a slightly different version of the presentation at an annual conference on Composites, Materials, and Structures (CMS Conference) later that same month. IAF, Tab 20 at 6, Tab 22 at 4. The appellant was listed as the primary author, but several other individuals were also listed as coauthors. IAF, Tab 24 at 6.

After the CMS Conference, an individual reached out to one of the listed coauthors of the presentation with questions about the presentation's content. IAF, Tab 19 at 10. The purported coauthor, an outside contractor, contacted V.G., Chief, DEVCOM ARL Ceramics and Transparent Materials Branch, with questions about the presentation, and he stated that he was unaware that he had been named a coauthor. *Id.* V.G. reviewed the presentation, and although it was coded for public release, he believed some of the information it contained was controlled unclassified information (CUI) and was therefore unsuitable for public dissemination. *Id.*

After learning of this situation, the appellant's third-level supervisor, J.Z., Director, Weapons & Materials Research, initiated an investigation regarding the appellant's potential release of CUI, the authorship of the presentation, and whether the appellant had abided by the Form 1 review process. IAF, Tab 25-6, Hearing Recording (testimony of J.Z.). B.P., a Chief Scientist, was appointed to investigate the matter. IAF, Tab 4 at 78-81. The memorandum appointing B.P. to investigate warned that, if he came to suspect any person may have engaged in criminal conduct, B.P. should seek legal advice about how to proceed and should not elicit any information from a suspect without first advising them of their Fifth Amendment rights. *Id.* at 80.

In April 2022, B.P. emailed the appellant to notify him that the agency was investigating the "potential inclusion of Confidential Unclassified Information (CUI)" in the presentation he authored which was given at the CMS Conference. *Id.* at 73. B.P. requested the appellant's availability for an interview to discuss this and other concerns. *Id.* They set an interview date of April 28, 2022. *Id.* at 69. On that date, B.P. appeared, along with the appellant and N.H., a Labor and Management Employee Relations Specialist. *Id.* After a brief introduction by B.P., the appellant stopped the interview to read a prepared written statement, stating that he would not contribute to an "informal" interview based on hearsay and that he had protected rights and would not be subjected to workplace discrimination or harassment. *Id.* at 69-70. The appellant requested that B.P. proceed with "the proper [F]ederal legal procedures that are necessary, and he would respond accordingly." *Id.* at 70. B.P. requested a copy of the appellant's statement for the record, but the appellant refused. *Id.* at 69-70.

A couple hours after the failed interview, B.P. emailed the appellant, warning the appellant that he had an obligation to answer questions and otherwise cooperate with official investigations. *Id.* at 71-72. B.P. further warned that failure to do so could result in discipline, including removal from service. *Id.* at 72. In doing so, B.P. instructed the appellant to respond with dates on which

they could meet for a cooperative interview. *Id.* The appellant responded just minutes later, without agreeing to meet again or otherwise cooperate with B.P.'s investigation. *Id.* at 71. Instead, the appellant asked that B.P. "proceed with the proper [F]ederal legal procedures that are necessary, and [he would] respond accordingly." *Id.*

On May 19, 2022, J.Z. emailed the appellant, "directing [him] to cooperate" with the investigation, "includ[ing] . . . providing truthful answers to [B.P.'s] questions . . . [and] any documentation that [he] requests." *Id.* at 66-68. The appellant responded that he "made a statement" to B.P. and requested that J.Z. "proceed with the proper [F]ederal legal procedures that are necessary, and [he would] respond accordingly." *Id.* at 66. J.Z. emailed the appellant that his prepared statement was "not cooperating" with the investigation and that a continued failure to cooperate with the investigation could result in disciplinary action, including removal from the Federal service. *Id.* at 64-65. The appellant responded that J.Z. "[did] not have the right to impose [his] will upon [the appellant]." *Id.* at 64. He further asserted that J.Z. was "blatantly abusing [his] authority." *Id.*

In June 2022, J.Z. issued the appellant a notice of proposed removal. *Id.* at 57-60. The proposed removal contained two charges, failure to cooperate in an agency investigation and insubordination, and each charge contained two specifications. *Id.* For the first charge, failure to cooperate in an agency investigation, the specifications concerned (1) the appellant's April 28, 2022 interaction at the scheduled interview and (2) the appellant's response to B.P.'s email about his required cooperation later that same day. *Id.* at 57. For the second charge, insubordination, the specifications concerned (1) the appellant's response to J.Z.'s initial May 19, 2022 message requiring the appellant's cooperation and (2) the appellant's response to J.Z.'s follow-up message on May 19, 2022, further requiring the appellant's cooperation. *Id.* at 58.

The appellant responded to the proposed removal in writing, asserting that his actions were consistent with his Fifth Amendment right to silence.  *Id.* at 47-56.  In October 2022, the deciding official sustained the removal.  *Id*. at 20-34.

The appellant timely filed an initial appeal, challenging his removal.  IAF, Tab 1 at 7.  He alleged that the agency could not prove its charge and that his removal was unlawful because he was not given a warning of his rights under *Kalkines*, 200 Ct. Cl. 570, that the agency did not properly consider the factors found in *Douglas v. Department of Veterans Affairs*, 5 M.S.P.R. 280, 305-06 (1981), and that his removal was retaliatory for his prior EEO activity.  IAF, Tab 1 at 12.

After holding the appellant's requested hearing, the administrative judge issued an initial decision that reversed the appellant's removal.  IAF, Tab 27, Initial Decision (ID).  The administrative judge found that the agency did not prove its first specification of its failure to cooperate in an investigation charge because the agency did not pose any questions at the appellant's April 28, 2022 interview.  ID at 8-11.  As to the remaining specification of this charge and the two specifications of the insubordination charge, the administrative judge concluded that the appellant reasonably believed that his statements to B.P. could be used in a criminal investigation against him.  ID at 12 14, 16, 18.  She determined that the appellant invoked his Fifth Amendment privilege against self-incrimination, and therefore, because he was not given a *Kalkines* warning, his removal for charges of insubordination and failure to cooperate in an agency investigation could not be sustained.  ID at 14, 18, 21.  Lastly, the administrative judge found that the appellant did not prove his affirmative defense of reprisal for prior EEO activity.  ID at 18-21.

The agency has filed a timely petition for review.  Petition for Review (PFR) File, Tab 1.  The agency disputes the administrative judge's determination that the appellant invoked his Fifth Amendment right against self-incrimination at

the April 28, 2022 meeting with B.P. PFR File, Tab 1 at 10. Additionally, the agency reargues that the appellant could not have had a reasonable belief that any statements elicited in this investigation could have been used in his own criminal investigation. *Id*. at 15. With its petition for review, the agency has included a certification that it has implemented the administrative judge's ordered interim relief. *Id*. at 26. The appellant has responded to the petition for review, and the agency has replied.[2] PFR File, Tabs 3-4.

## DISCUSSION OF ARGUMENTS ON REVIEW

The agency did not prove the first specification of its lack of cooperation charge.

The text of the first specification underlying its lack of cooperation charge describes the initial interaction between the appellant and B.P. on April 28, 2022, including B.P.'s statement about the purpose of the interview, followed by the appellant's reading of his written response. IAF, Tab 4 at 57. The specification concludes by stating that the appellant's "refusal to answer questions by the investigator constitutes failure to cooperate." *Id*.

The administrative judge found this specification unproven because the agency did not establish that the appellant was asked any question or ordered to answer questions. ID at 9. We find no reason to conclude otherwise. While investigator B.P. may have planned to ask the appellant questions at this initial meeting, it cannot be said that the appellant "refus[ed] to answer questions" if none were posed to him. The agency's petition for review contains no substantive or persuasive argument to the contrary. Accordingly, this first specification of the lack of cooperation charge is not sustained.

---

[2] The appellant did not file his own petition for review to challenge the administrative judge's finding of no proven EEO reprisal. Because of this and because we agree with the administrative judge's EEO reprisal analysis, we will not discuss the matter further in this decision.

<u>The agency did prove the remaining specification of its lack of cooperation charge and both specifications underlying its insubordination charge, all of which were valid.</u>

Once again, the second specification for the lack of cooperation charge alleged that the appellant failed to cooperate on April 28, 2022, as he responded to B.P.'s email informing the appellant of his obligation to cooperate and offering the appellant another opportunity to do so.  IAF, Tab 4 at 56.  Meanwhile, the first specification of the insubordination charge alleged that the appellant was insubordinate on May 19, 2022, as he responded to J.Z.'s first order to cooperate with the investigation.  *Id.* at 57.  Finally, the second specification of the insubordination charge alleged that the appellant was also subordinate later on the same day, as he responded to J.Z.'s second order to cooperate.  *Id.*

<u>The agency proved that this conduct occurred.</u>

We find this alleged conduct proven by preponderant evidence, including the parties' email messages on the dates in question.  *E.g.*, IAF, Tab 4 at 57-58, 64-68, 71-72.  Broadly speaking, the evidence shows that the agency repeatedly insisted upon the appellant's cooperation on the dates in question, but the appellant responded by refusing, indicating that he would not do as instructed, at least not at that time.  *Id.*  The appellant has not substantively argued otherwise.

<u>The appellant did not invoke his Fifth Amendment rights.</u>

The appellant has consistently argued that he cannot be disciplined for the aforementioned conduct because he invoked his Fifth Amendment rights and the agency failed to provide *Kalkines* warning.  *E.g.*, IAF, Tab 20 at 8, Tab 25-10; PFR File, Tab 3.  The administrative judge found that the appellant did invoke his Fifth Amendment rights, implicitly.  ID at 11-12, 16, 18.  We find that, while he may have intended to do so, the appellant did not invoke his Fifth Amendment rights.

While "no ritualistic formula or talismanic phrase is essential in order to invoke the privilege against self-incrimination," the appellant must make "an

objection stated in language that a[n agency] may reasonably be expected to understand as an attempt to invoke the privilege." *Emspak v. United States*, 349 U.S. 190, 194 (1955). The invocation of the right to remain silent must be unequivocal and unambiguous. *Berghuis v. Thompkins*, 560 U.S. 370, 381-82 (2010).

In responding to the agency's notice of proposed removal, the appellant recounted his statement to B.P. as follows:

> I do not have anything to contribute to this hearsay-based conference. I welcome any formal accusations made through proper federal legal procedures against me. I will continue to pursue my federal right to be free from employment discrimination, including harassment, through "protected activity", until equitable justice through due process is achieved.

IAF, Tab 4 at 48 (punctuation as in original). This statement matches the summary of the statement provided by B.P. in a memorandum of record prepared shortly after the informal interview took place. *Id.* at 69. When subsequently asked, at his Board hearing, whether he ever explicitly referenced a Fifth Amendment right to silence or right against self-incrimination, the appellant conceded that he did not. IAF, Tab 25-11 at 114-16, 140.

So, while the appellant contemporaneously referenced concerns about "hearsay," the right to be free from discrimination and harassment in the workplace, and "due process," he did not reference the Fifth Amendment or the privilege against self-incrimination. To the extent that he intended to assert his Fifth Amendment rights, we find that his statement was ambiguous, and a reasonable person would not understand it to be an attempt to invoke the same.

The appellant had a reasonable belief that the agency's investigation could expose him to criminal liability.

Although we disagree with the administrative judge's determination that the appellant implicitly invoked his Fifth Amendment rights, we agree with her general sentiment that the appellant had a reasonable belief regarding the

possibility of criminal liability. We are not persuaded by the agency's arguments to the contrary.

The administrative judge found that the appellant credibly testified that the release of confidential information is considered "an extremely serious offense" for which there are criminal penalties and reasonably believed that his participation in the agency's investigation could lead to his criminal prosecution. ID at 12-14; IAF, Tab 25-11 at 95 (testimony of the appellant). In support, the administrative judge cited to 18 U.S.C. § 1905, which prohibits Federal employees from disclosing "confidential information" obtained during "the course of employment." ID at 13-14. The statute provides that it is a crime to release such information unless "authorized by law." 18 U.S.C. § 1905. Penalties include up to a year of imprisonment and the loss of employment. *Id.*

The agency argues on review that the mention of "confidential unclassified information" was an obvious typographical error by agency officials, the appellant was aware that the proper term was actually *controlled* unclassified information, and the administrative judge erred by finding that the appellant could have any reasonable belief of criminal penalty stemming from the agency's investigation into the latter. PFR File, Tab 1 at 15-16. We disagree. The agency is correct that the appellant has since acknowledged that there is "no such classification as 'Confidential Unclassified Information.'" IAF, Tab 4 at 54. However, we do not find this dispositive as to the question of the appellant's reasonable belief in his potential criminal liability at the time in question.

Although the agency's typographical error may be obvious in hindsight, the appellant testified that when he saw the word "confidential" in B.P.'s email he was frightened that he accidentally disseminated confidential information, which he described as an "extremely serious offense" and "extremely escalated" from the dissemination of controlled unclassified information. IAF, Tab 4 at 54, Tab 25-11 at 95 (testimony of the appellant). He also testified that, based on the email, he was concerned that the presentation contained some combination of

confidential information and controlled unclassified information. IAF, Tab 25-11 at 135 (testimony of the appellant).

On review, the agency also argues that the appellant's testimony was self-serving and that his concerns regarding the possible combination of classified information and controlled unclassified information was an attempt to manufacture a reason to support his Fifth Amendment argument after the fact. PFR File, Tab 1 at 18-19. We disagree with the agency's argument that the fact that the appellant's testimony was self-serving requires us to discredit it. Although a witness's bias is one of many factors to consider in assessing his credibility under *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), most testimony that an appellant is likely to give, other than admissions, can be characterized as self-serving, and his testimony should not be discredited solely on that basis, *Thompson v. Department of the Army*, 122 M.S.P.R. 372, ¶ 25 (2015). Further, the administrative judge found that the appellant's testimony was supported by the evidence of record, which contained multiple instances of the appellant being told that he was being investigated for the potential dissemination of confidential unclassified information. ID at 12-13.

<u>The agency was not yet obligated to provide *Kalkines* notice when the appellant engaged in the misconduct.</u>

A Federal agency's authority to discipline an employee for failure to cooperate in an investigation is circumscribed by the Fifth Amendment to the Constitution, which provides in relevant part that "no person . . . shall be compelled in any criminal case to be a witness against himself." *Shows v. Department of the Treasury*, 2025 MSPB 5, ¶ 6. Thus, under certain circumstances, an agency can remove a Federal employee for failing to answer questions in a civil disciplinary inquiry only if the employee is sufficiently warned before questioning "that []he is subject to discharge for not answering and that [his] replies (and their fruits) cannot be employed against [him] in a criminal case." *Id.* (quoting *Kalkines*, 200 Ct. Cl. at 574). Case law identifies two

requirements for invalidating a charge under *Kalkines*: (1) the agency failed to provide the required warning, and (2) the appellant reasonably believed that elicited statements would be used in criminal proceedings. *Shows*, 2025 MSPB 5, ¶¶ 6, 9; *Ashford v. Department of Justice*, 6 M.S.P.R. 458, 465-66 (1981).

It is undisputed that the agency did not provide the appellant with a *Kalkines* warning. Plus, as detailed above, the appellant had a reasonable belief that the agency's *investigation* could eventually expose him to criminal liability. However, we find that there is a meaningful distinction between the appellant altogether refusing to appear for an investigatory interview and his refusing to answer specific questions that could lead to criminal prosecution. This case involves the former, not the latter.

Had the agency been given the opportunity to ask substantive questions of the appellant regarding his improper release of information, which the appellant reasonably believed to pose criminal liabilities, the agency could not have then charged the appellant with failing to respond in the absence of *Kalkines* notice. Here, though, the appellant's failure to cooperate and insubordination occurred before any potentially incriminating questions were posed. For that reason, under the particular circumstances of this case, we find that *Kalkines* notice was not yet required. Thus, we find that the agency's charges were valid, and the appellant's misconduct need not be excused.

## The agency proved the requisite nexus and reasonableness of its penalty.

In an appeal such as this, an agency must also establish a nexus between the action and the efficiency of the service, as well as the reasonableness of its penalty. *Hall v. Department of Defense*, 117 M.S.P.R. 687, ¶ 6 (2012). The nexus requirement is undoubtedly satisfied, given the nature of the misconduct which occurred at work. Thus, all that remains is the question of whether the agency's chosen penalty is within the tolerable limits of reasonableness.

When the Board sustains all of an agency's charges, the Board may mitigate the agency's original penalty to the maximum reasonable penalty when it

finds the agency's original penalty too severe. *Brough v. Department of Commerce*, 119 M.S.P.R. 118, ¶ 9 (2013). Notwithstanding that authority, the Board has long held that in a case like this, when all of the charges are sustained, even when some of the specifications are not, the agency's penalty determination is entitled to deference and should be reviewed only to determine if the agency considered all of the relevant factors and exercised its discretion within the tolerable limits of reasonableness. *Id.* In doing so, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that managerial judgment has been properly exercised. *Id.*

Here, the proposing official conducted a *Douglas* factor analysis to determine that removal was most appropriate, and the deciding official adopted the same. IAF, Tab 4 at 21-23, 27-34. For example, the deciding official found that mitigating factors included the appellant's 18 or so years of service with satisfactory performance and no discipline. *Id.* However, he further found that aggravating factors included the nature and seriousness of the offenses, the appellant's job level and type of employment, management's loss of confidence in him, and the clarity of notice that the conduct was unacceptable. *Id.* While the appellant has generally disputed the agency's application of the *Douglas* factors and the reasonableness of removal, we find those broad-based assertions unavailing. Regardless of whether we would have imposed the same penalty for the same misconduct, the agency established that it considered the relevant factors, and its ultimate decision falls within the tolerable limits of reasonableness. Thus, the agency met its burden, and we must sustain the appellant's removal.

**NOTICE OF APPEAL RIGHTS**[3]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[3] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[4] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[4] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


*Gina K. Grippando*

FOR THE BOARD:                    _____
                                                Gina K. Grippando
                                                Clerk of the Board

Washington, D.C.